## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| BOARD OF EDUCATION OF MONTGOMERY COUNTY, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) )   Civil Action No. 20-cv-2301-LKG |
| v. | )   Dated:  March 30, 2022 ) |
| S.M., a minor, by his parents and next friends, D.M., individually and J.M., individually, | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

### I.      INTRODUCTION

This Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400-1482, case involves a challenge to two individual education programs ("IEP") developed by the Montgomery County Public Schools ("MCPS") for the education of S.M., a student with disabilities.  *See generally* Compl., ECF No. 1.  The parties have filed cross-motions for summary judgment on the issues of whether the MCPS provided S.M. with a free, appropriate public education ("FAPE") for the 2018-19 and 2019-20 school years, pursuant to Fed. R. Civ. P. 56.  *See generally* Def. Mot., ECF No. 20; Def. Mem., ECF No. 20-1; Pl. Mot., ECF No. 22; Pl. Mem., ECF No. 22-1.  No hearing is necessary to resolve these motions.  *See* L.R. 105.6 (D. Md. 2021).  For the reasons set forth below, the Court **GRANTS-in-PART** and **DENIES-in-PART** defendants' motion for summary judgment and **GRANTS-in-PART** and **DENIES-in-PART** plaintiffs' cross-motion for summary judgment.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

This IDEA case involves a challenge to two IEPs developed by the MCPS for the education of S.M., a student with disabilities.  *See generally* Compl.  Plaintiffs are the Board of Education of Montgomery County (the "Board"), a local education agency that operates the MCPS, and Dr. Jack Smith, the Superintendent of MCPS.  *Id.* at ¶¶ 2-3.  Defendant S.M. is a minor student who resides in Montgomery County, Maryland, with his parents, defendants D.M. and J.M.  *Id.* at ¶¶ 4-5.

As background, S.M. is a male student who has been identified by the MCPS as having an educational disability and being eligible for special education services under the IDEA.  Pl. Mem. at 3.  S.M. attended the Maddux School, a private school in Maryland, for preschool during the 2014-15; 2015-16; and 2016-17 school years, and for kindergarten during the 2017-18 school year.  *Id.* at 3 (citing Pl. Exs. 1, 13).  Concurrently, S.M attended Montgomery County's Infants and Toddlers Program from April 2012 through August 2016 and the MCPS's Pre-Kindergarten ("Pre-K") program for two days per week at Beall Elementary School for the 2016-17 school year.  *Id.*  During the 2017-18 school year, S.M. also accessed speech, language and educational services delineated on his service plan at Beverly Farms Elementary School.  *Id.*

During the 2017-18 school year, the MCPS offered S.M. an IEP to be implemented at Beverly Farms Elementary School.  Def. Mem. at 4; Compl. at ¶ 12.  But, S.M.'s parents chose to continue his placement at the Maddux School instead and they requested a service plan in lieu of an IEP. [2]  Def. Mem. at 4; *see also* Pl. Ex. 13 (S.M.'s Service Plan).  Pursuant to this service plan, the MCPS offered S.M. 50 minutes per week of pullout special education and 45 minutes per week of pullout speech therapy at Beverly Farms Elementary School.  Def. Mem. at 3 (citing Def. Ex. 13 at 17).

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); defendants' motion for summary judgment ("Def. Mot.") and memorandum in support thereof ("Def. Mem."); and plaintiffs' cross-motion for summary judgment ("Pl. Mot.") and memorandum in support thereof ("Pl. Mem.").

[2] A service plan is a program available to private school students with identified disabilities to access delineated services through the MCPS.  Pl. Mem. at 3 n.2.

The 2018-19 IEP

On June 18, 2018, the MCPS's IEP team—including S.M.'s parents, an educational consultant, Richard Weinfeld, and the Maddux School staff—met to develop S.M's IEP for the 2018-19 school year (the "2018-19 IEP"). Compl. at ¶ 11. During the development of the 2018-19 IEP, the Maddux School provided MCPS with teacher reports, teacher referrals and an end-of-year report, and representatives of the Maddux School also spoke with MCPS staff. Pl. Mem. at 4; *see also* Pl. Exs. 8-9, 16-17; Def. Ex. 17. Mr. Weinfeld also provided MCPS with his observation summary from a February 20, 2018, observation of S.M. at the Maddux School. Pl. Mem. at 4; *see also* Pl. Ex. 10. In addition, the MCPS relied upon its own observations of S.M to develop the 2018-19 IEP. Pl. Mem. at 4; *see also* Pl. Exs. 14-15; Pl. Ex. 20 (S.M.'s IEP for the 2018-19 school year).

The 2018-19 IEP provides for: (1) 2.5 hours per week of special education outside of the general education setting; (2) 13 hours and 45 minutes per week of special education inside of the general education setting; (3) 1.5 hours per week of speech therapy outside of the general education setting; (4) 30 minutes per week of occupational therapy outside of the general education setting; and (5) 1.5 hours per month of social skills services outside of the general education setting. *See* Pl. Ex. 20 at 37-38. This IEP also includes various supplemental aids and services, and instructional and testing accommodations that would be provided throughout S.M.'s school day by all educational providers. *Id.* at 15-24. In addition, the IEP provides that it would be implemented at S.M.'s home school, Beverly Farms Elementary School, which is the least restrictive environment under the IDEA. *Id.* at 40-41; *see also* Compl. at ¶ 15.

S.M.'s parents rejected the 2018-19 IEP and elected to instead place S.M. at the Lab School of Washington for the 2018-19 school year. Def. Mem. at 6; Pl. Mem. at 7.

The 2019-20 IEP

On April 10, 2019, and May 22, 2019, the MCPS held IEP meetings to develop an IEP for S.M. the 2019-20 school year (the "2019-20 IEP"). Def. Mem. at 7; Pl. Mem. at 5. The 2019-20 IEP team proposed the following services for S.M. for the 2019-20 school year: (1) 22 hours and 5 minutes per week of special education services outside of the general education setting for all academic areas; (2) 7 hours and 55 minutes per week of special education inside of the general education setting for art, music, physical education, lunch and recess; (3) 90 minutes

per week of speech therapy; and (4) 30 minutes per week of occupational therapy.  Def. Mem. at 9; Pl. Mem. at 5; *see also* Pl. Ex. 46 at 42-43 (2019-20 IEP).  The 2019-20 IEP also includes various supplemental aids and services, and instructional and testing accommodations that would be provided throughout the school day.  *See* Pl. Ex. 46 at 16-29.  In addition, the 2019-20 IEP provides that it would be implemented at the Learning Center located at Dufief Elementary School, which is the least restrictive environment and closest to S.M.'s home.  *Id*. at 44-45.

S.M.'s parents rejected the 2019-20 IEP and they elected to place S.M. at the Lab School of Washington for the 2019-20 school year.  Def. Mem. at 10; Pl. Mem. at 7.  S.M. has continued to attend the Lab School of Washington.  Def. Mem. at 10; Pl. Mem. at 7.

<u>The Administrative Proceedings And ALJ Decision</u>

On September 26, 2019, S.M. and his parents filed a request for a due process hearing appealing the 2018-19 and 2019-20 IEPs.  Compl. at ¶ 31.  A 12-day administrative hearing was held on this appeal in early 2020, before Administrative Law Judge ("ALJ") Steven Adler of the Maryland Office of Administrative Hearings.  *Id.* at ¶ 33; *see also* Administrative Hr'g Dec. ("Dec.") at 4-6.

During the administrative hearing, six witnesses testified on behalf of the MCPS:  (1) Jillian Smiley, an expert in special education and elementary education; (2) Jena Filler, an expert in speech language pathology and early childhood education; (3) Sima Berman, an expert in special education; (4) Lynn Tozzi, an expert in occupational therapy and school-based occupational therapy; (5) Jane Juliano, an expert in physical therapy; and (6) Karen Kart, an expert in adapted physical education.  Dec. at 13.  S.M. and his parents also presented the following six witnesses:  (1) Richard Weinfeld, a special education consultant; (2) William Stixrud, a private clinical neuropsychologist; (3) Judy Shincarick, the Associate Head of the Elementary Division of the Lab School of Washington; (4) Courtney Heldman, the Director of Occupational Therapy for the Lab School of Washington; (5) Christin Mentrikoski, a speech-language pathologist and co-teacher at the Lab School of Washington; and (6) S.M.'s mother.  *Id.* at 12.  The parties also submitted 153 exhibits during the proceedings.  *Id.* at 7-11.

 On April 10, 2020, the ALJ issued a decision finding that:  (1) S.M. had not proven that the MCPS violated the IDEA by failing to provide him with a FAPE for the 2018-19 school year; (2) S.M. had proven that the MCPS violated the IDEA by failing to provide him with a FAPE for

the 2019-20 school year, by proposing an IEP that was not reasonably calculated to confer an educational benefit or to allow him to make appropriate educational progress; (3) the MCPS was required to provide tuition reimbursement for the unilateral placement of S.M. in the Lab School of Washington; and (4) the directives of the IDEA would be best effectuated through amendment and revision to S.M.'s 2019-20 IEP, rather than prospective private placement beyond the 2019-20 school year.  *Id.* at 35-52.  In reaching this decision, the ALJ made several findings of fact, including that:

> 1.      [S.M.] has been diagnosed with an Expressive Language Disorder, a Phonological Disorder, a Specific Disorder of Motor Function, and Attention Deficit Hyperactivity Disorder-Predominately Inattentive Presentation.

> 2.      At all times relevant to the proceeding, the complex constellation of [S.M.]'s disabilities have had a "significant impact" on his functionality, his ability to communicate, and his ability to access the educational curriculum.

> 3.      [S.M.] suffers from a developmental delay, particularly relating to expressive language and articulation; [S.M.] suffers from childhood apraxia of speech.

> 4.      [S.M.] is unable to access the educational curriculum without intensive supports, with immediate teacher feedback, and only in small group settings; [S.M.] requires numerous trials—extensive practice—to acquire and generalize a skill.

> 5.      [S.M.] has significant limitations in utilizing and understanding nonverbal communication and does not peer model; he requires explicit teacher instruction and direction.

> 6.      [S.M.] requires a ratio of two students to one teacher to access the educational curriculum for reading, to receive an educational benefit, and to make educational progress.

> 7.      [S.M.'s] 2019-20 IEP, with implementation at Dufief, does not provide for reading instruction in a ratio of two students to one teacher.

> 8.      [S.M.'s] 2019-20 IEP is not appropriate as it is not reasonably calculated to allow him to gain an educational benefit and make educational progress.

*Id.* at 14-23 (citations omitted).

The ALJ also found that "[t]here is little question that [S.M.] suffers from multiple disabilities, which taken together, have a significant impact on his ability to access the educational curriculum and impact his functioning generally." *Id.* at 35. In this regard, the ALJ also observed that:

> [T]he Supreme Court and Fourth Circuit make plain that my right of review does not extend to substituting my judgment for those of the local educators. Instead "[t]he key inquiry regarding an IEPs substantive adequacy is whether, taking account of what the school knew or reasonably should have known of a student's needs at the time, the IEP it offered was reasonably calculated to enable the specific student's progress."

*Id.* at 37 (citations omitted).

Applying this standard to his analysis of the 2018-19 IEP, the ALJ held that this IEP afforded S.M. a FAPE, because S.M. failed to show that the 2018-19 IEP was not reasonably calculated to enable him to make appropriate progress in light of his circumstances. *Id.* at 35-38 (citing *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 998-99 (2017)). Notably, the ALJ observed that the MCPS's IEP team developed the 2018-19 IEP with input from MCPS educators, S.M.'s parents, Mr. Weinfeld, and the director of the Maddux School, and that the Maddux School also provided the MCPS with educational data for use in developing the IEP. *Id.* at 36.

The ALJ also observed that, in developing the 2018-19 IEP, the MCPS reasonably relied upon, and found more probative, the assessments and opinions of the special educators who most recently delivered instruction to S.M., rather than the opinions of those who had not delivered instruction to S.M., in determining S.M.'s strengths and abilities. *Id.* at 38; *see also Endrew F.*, 137 S. Ct. at 999. And so, the ALJ denied S.M.'s request for tuition reimbursement for the 2018-19 school year. Dec. at 52.

The ALJ reached a different conclusion with regards to his analysis of the 2019-20 IEP. In this regard, the ALJ determined that the IEP for this school year did not afford S.M. a FAPE, because the MCPS did not properly consider data from the Lab School of Washington in developing this IEP. *Id.* at 38-45. Specifically, the ALJ found that, at the time of the May 2019 IEP team meeting, the MCPS's IEP team members were verbally provided with the results of the Lab School of Washington's end-of-year evaluations and assessments of S.M., as well as the Lab

School of Washington's IEPs, mid-year assessments, and S.M.'s work samples, which demonstrate the extent of S.M.'s disabilities. *Id.*

The ALJ also found that the MCPS "did not then provide 'a cogent and responsive explanation' for rejecting the opinion of Ms. Mentrikoski, [S.M.'s co-teacher at the Lab School of Washington,]. . . as to [S.M.]'s needs to access the reading curriculum," to show that the 2019-20 IEP "is reasonably calculated to enable [S.M.] to make progress appropriate in light of [his] circumstances." *Id.* at 39 (quoting *Endrew F.*, 137 S. Ct. at 1002). In this regard, the ALJ found that the MCPS's IEP team members were aware that S.M.'s needs had increased significantly from the 2018-19 school year. *Id.* at 43. In addition, the ALJ noted that Ms. Mentrikoski testified that S.M. requires a two-students-to-one-teacher ratio to be accessible for learning reading. *Id.* at 41; *see also* Tr. at 2401-03, 2412, 2416-18 (stating that S.M. requires more intensive supports than are typical for other students with similar language-based learning disabilities).

Specifically, the ALJ found that Ms. Mentrikoski's opinion, which was "formed based on daily direct observation of what [S.M.] needs to access the curriculum over a two-year period with longitudinal observational data of his speech and language strengths and needs beginning when [he] was three years old, and continuing through the end of the 2019-20 school year, is of greater predictive quality and greater evidentiary value in [his] decision-making calculus," than the opinions of MCPS educators Ms. Smiley and Ms. Filler.[3] Dec. at 43-44. In addition, the ALJ noted that Ms. Mentrikoski's observations were consistent with Dr. Stixrud's observations, when he evaluated S.M. at age five in 2016. *Id.* Given this, the ALJ concluded that the weight and probative force of Ms. Mentrikoski's opinion and factual testimony overcame the deference usually afforded to the opinions of MCPS educators and he found that S.M. was unable to access the curriculum without the instructional delivery of reading in a ratio of two students to one teacher. *Id.* at 44-45.

---

[3] The ALJ observed that Ms. Mentrikoski testified that S.M. "does not learn from peer models, must be explicitly told how to do things, does not get immediate feedback from another's body language, lacks nonverbal communications skills, and does not look at a person or hold eye contact, but instead typically looks up and to the right when interacting with them." Dec. at 44. The ALJ also observed that Ms. Mentrikoski's basis for these assessments was daily observation of S.M.'s interactions with 11 other students in his homeroom class and with 69 other students during recess. *Id.*

The ALJ also concluded that, by proposing placement at Dufief Learning Center—where S.M.'s "reading instruction would be delivered in a small group setting, but where the teacher to student ratio [would not be] standardized at two to one and may vary widely based on factors including class size, the specific skill being taught, the individual teacher's discretion, and where the definition of small group may be interpreted expansively"—the MCPS's educators developed an IEP that was not specially designed and individualized to S.M.'s needs. *Id.* at 40. Given this, the ALJ found that the MCPS could not provide S.M. a FAPE, because it "lacked the very lynchpin of the IEP—making [S.M.] accessible for learning." *Id.* (citing *Bd. Educ. Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 200–01 (1982)).[4] And so, the ALJ ordered the MCPS to pay tuition reimbursement for S.M.'s placement at the Lab School of Washington during the 2019-20 school year. *Id.* at 50 (finding that the equitable factors addressed by the First Circuit in *Town of Burlington v. Dep't of Educ. Mass.*, 736 F.3d 773, 799 (1st Cir. 1984), *aff'd sub nom.*, *Sch. Comm. of Burlington v. Dep't of Educ. Mass.*, 471 U.S. 359 (1985), including "whether [the child's] parents made a specific proposal for a private placement and attempted in good faith to gain an agreement with the school system before moving the child," are met by the actions of S.M.'s parents in this case).

## B.   Procedural Background

Plaintiffs commenced this action on August 6, 2020. *See* Compl. On March 23, 2021, defendants filed a motion for summary judgment and a memorandum in support thereof. *See* Def. Mot.; Def. Mem. On April 26, 2021, plaintiffs filed a response in opposition to defendants' motion, a cross-motion for summary judgment and a memorandum in support thereof. *See* Pl. Mot.; Pl. Mem.

---

[4] The ALJ also afforded greater weight to Ms. Mentrikoski's opinion than to Ms. Filler's and Ms. Smiley's, due to Ms. Mentrikoski's actual knowledge of S.M. "derived from her daily interactions delivering reading instruction and twice weekly interaction delivering direct [speech language therapy] to" S.M.  Dec. at 42. In this regard, the ALJ observed that Ms. Smiley spent approximately three hours observing and delivering services to S.M., having seen him a total of four times—"one thirty-five to forty minute observation at Beall Elementary School during a Pre-K language class on May 10, 2017, and during three forty to fifty minute resource sessions delivering reading and writing instruction at Beverly Farms [Elementary School] in the spring of 2018," but had otherwise not had contact with him since that time.  *Id.*  Similarly, the ALJ observed that Ms. Filler spent approximately seven and-a-half hours delivering speech language therapy to S.M. between March 14, 2018 and May 30, 2018, but otherwise has not interacted with S.M. nor had any contact with him since that three-month period.  *Id.*

On May 21, 2021, defendants filed a reply in support of their motion for summary judgment and a response in opposition to plaintiffs' cross-motion. *See* Def. Resp., ECF No. 23. On June 17, 2021, plaintiffs filed a reply in support of their cross-motion for summary judgment. *See* Pl. Reply, ECF No. 24.

The parties' cross-motions for summary judgment having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When reviewing cross-motions for summary judgment in an IDEA case, this Court is "obliged to conduct a modified de novo review" of the administrative record, giving "due weight" to the underlying administrative proceedings. *JH ex rel. JD v. Henrico Cty. Sch. Bd.*, 395 F.3d 185, 196 (4th Cir. 2005) (citations omitted). Given this, the factual findings of the ALJ are considered *prima facie* correct, if they are "regularly made." *See J.P. v. Cty. Sch. Bd. Hanover Cty., Va.*, 516 F.3d 254, 259 (4th Cir. 2008); *Cty. Sch. Bd. Henrico Cty., Va. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 305 (4th Cir. 2005). And so, if the Court "is not going to follow [the ALJ's factual findings, it] is required to explain why it does not" do so. *Hartmann ex rel Hartmann v. Loudoun Cty. Bd. of Educ.*, 118 F.3d 996, 1001 (quoting *Doyle v. Arlington Cty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)).[5]

---

[5] The Court has held that, when evaluating whether findings of fact are "regularly made, the proper inquiry concerns the *process* through which the findings were made." *S.A. v. Weast*, 898 F. Supp. 2d 869, 874 (4th Cir.) (citation omitted) (emphasis in original); s*ee also J.P.*, 516 F.3d at 259; *Doyle*, 953 F.2d at 105 ("[I]n deciding what is the due weight to be given an administrative decision under *Rowley*, we think

**B.      The Individuals With Disabilities Education Improvement Act**

The IDEA requires that all States that receive federal funds for education provide each child between the ages of three and 21, who has a disability, with a free and appropriate public education.[6]  20 U.S.C. § 1412(a)(1)(A).  The FAPE guaranteed by the IDEA must provide a disabled child with meaningful access to the educational process.  *See Rowley*, 458 U.S. at 192. The FAPE must also be reasonably calculated to confer "some educational benefit" on the disabled child.  *Id.* at 207.  And so, the educational benefit must be provided in the least restrictive environment appropriate to the child's needs, with the disabled child participating to the "maximum extent appropriate" in the same activities as his or her non-disabled peers.  20 U.S.C. § 1412(a)(5)(A); *see also* 34 C.F.R. § 300.550.

To ensure delivery of a FAPE, the IDEA requires a school district to provide an appropriate IEP for each child determined to be learning disabled.  20 U.S.C. § 1414(d)(1)(A). The Supreme Court has held that, to "meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *Endrew F.*, 137 S. Ct. at 999.  The Supreme Court has also recognized that courts should afford deference to the educational judgment of school officials when evaluating the sufficiency of an IEP under the IDEA.  *See id.* at 1001.  In addition, the United States Court of Appeals for the Fourth Circuit has recognized the significant importance of the IDEA's least restrictive environment provisions and held that "[m]ainstreaming of handicapped children into regular school programs where they might have opportunities to study and to socialize with non-handicapped children is not only a laudable goal but is also a requirement of the [IDEA]."  *DeVries ex. rel. DeBlaay v. Fairfax Cty. Sch. Bd.*, 882 F.2d 876, 878 (4th Cir. 1989); *see also M.M. ex. rel. D.M. v. Sch. Dist. Greenville Cty.*, 303 F.3d 523, 526 (4th Cir. 2002) (holding that special education services "must be provided to a disabled child in the least restrictive and appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children.") (citation omitted).

---

a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed.").

[6] Maryland's regulations governing the provision of a FAPE to children with disabilities in accordance with the IDEA are found at Md. Regs. Code tit. 13A, §§ 05.01 to .16.

If the parents are not satisfied with the IEP, they may "present a complaint with respect to any matter related to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6).  After such a complaint has been received, the parents are entitled to request a due process hearing conducted by the state or local educational agency.  *Id.* at § 1415(f).  In Maryland, the Maryland Office of Administrative Hearings conducts the due process hearing and any party can appeal the administrative ruling to federal or state court.  Md. Code Ann., Educ. § 8-413(d)(1); Md. Regs. Code tit. 13A, § 05.01.15(C)(1).  If the Court determines that a violation has occurred, then it "shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2); *see also Sch. Comm. Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985) (when a FAPE is not provided to a disabled student, the student's parents may place the child in a private school and then seek tuition reimbursement from the state).

## IV.    LEGAL ANALYSIS

The parties have filed cross-motions for summary judgment on the following three issues: (1) whether MCPS provided S.M. with a FAPE in the least restrictive environment for school year 2018-19; (2) whether the MCPS provided S.M. with a FAPE in the least restrictive environment for school year 2019-20; and (3) whether defendants are entitled to tuition reimbursement.  *See* Def. Mem. at 1-2; Pl. Mem. at 1-2.

In this regard, defendants first argue in their motion for summary judgment that the ALJ incorrectly determined that the MCPS provided S.M. with a FAPE for the 2018-19 school year, because:  (1) the ALJ did not properly weigh the evidence regarding the IEP; (2) the ALJ failed to consider evidence regarding S.M.'s response to programing at the Lab School of Washington; (3) the ALJ failed to reconcile his other findings and to recognize S.M.'s intensive needs in assessing the 2018-19 IEP; and (4) the ALJ overlooked details about the prior programs relied upon by the MCPS in developing the IEP.  *See* Def. Mem. at 27-40.  Plaintiffs counter in their cross-motion that the ALJ's decision regarding the 2018-19 IEP should be upheld, because:  (1) the ALJ's findings of fact were regularly made; (2) the record evidence shows that the 2018-19 IEP provides a FAPE in the least restrictive environment; (3) the record evidence shows that the MCPS worked collaboratively with S.M.'s parents in developing the 2018-19 IEP; (4) the MCPS conducted extensive evaluations of S.M. in developing the IEP; (5) the MCPS appropriately

reviewed data and reports from the Maddux School in developing the IEP; and (6) the ALJ need not have considered S.M.'s response to the Lab School of Washington in his analysis of 2018-19 IEP.  *See* Pl. Mem. at 15-33.

Second, defendants argue that the ALJ correctly determined that the 2019-20 IEP did not provide S.M. with a FAPE, because the ALJ:  (1) provides a detailed analysis of the record evidence related to this issue; (2) reasonably found that the program at Dufief Learning Center did not provide reading instruction in a 2:1 ratio; and (3) appropriately concluded that the 2019-20 IEP was not reasonably calculated to allow S.M. to make educational progress.  *See* Def. Mem. at 24-27.  Plaintiffs counter that the Court should overrule the ALJ's decision regarding the 2019-20 IEP, because:  (1) the ALJ ignored a stipulation of fact regarding the classroom ratio at Dufief Learning Center and erred in finding that Dufief Learning Center would not provide a 2:1 ratio for reading instruction for S.M.; (2) the ALJ erred in finding that the subject 2:1 reading instruction ratio was in dispute when the 2019-20 IEP was developed; and (3) the ALJ applied the wrong legal standard in assessing the 2:1 reading instruction ratio, thereby, depriving the educators of latitude in applying their professional judgment in the educational setting.  Pl. Mem. at 33-42.

Lastly, defendants argue that they are entitled to receive tuition reimbursement for the 2018-19 school year, while plaintiffs argue that the ALJ's decision to award defendants tuition reimbursement for the 2019-20 school year is not an equitable remedy under the IDEA.  *See* Def. Mem. at 40-42; Pl. Mem. at 42-43.  And so, the parties request that the Court grant their respective motions for summary judgment on these three issues.  Def. Mem. at 42; Pl. Mem. at 43.

For the reasons set forth below, the record evidence shows that the ALJ did not err in finding that the 2018-19 IEP provided S.M. with a FAPE in the last restrictive environment for the 2018-19 school year.  The record evidence also shows that the ALJ did not err in finding that the 2019-20 IEP fails to provide S.M. with a FAPE in the least restrictive environment for the 2019-20 school year.  In addition, the record evidence makes clear that the ALJ appropriately awarded defendants tuition reimbursement for the 2019-20 school year, consistent with the IDEA.  And so, the Court **GRANTS-in PART and DENIES-in-PART** defendants' motion for

summary judgment and **GRANTS-in PART and DENIES-in-PART** plaintiffs' cross-motion for summary judgment.  Fed. R. Civ. P. 56.

### A. The ALJ's Factual Findings And Determinations Are Supported By The Record Evidence

To meet its obligations under the IDEA, the MCPS must offer S.M. "an IEP reasonably calculated to enable [him] to make progress appropriate in light of [his] circumstances." *Endrew F.*, 137 S. Ct. at 999.  The Supreme Court has recognized that ensuring that an IEP is "reasonably calculated" to meet a student's needs "requires a prospective judgment by school officials," and "[a]ny review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Id.* (emphasis in original).  And so, when evaluating the sufficiency of the IEPs at issue in this case, the Court should afford deference to the educational judgment of the MCPS school officials.  *Id.* at 1001.

Applying these standards here, the record evidence shows that the ALJ's factual findings and determinations regarding the 2018-19 IEP and 2019-20 IEP were regularly made, supported by the record evidence, and in accordance with the IDEA.  *See JH*, 395 F.3d at 196 (citations omitted) (when reviewing cross-motions for summary judgment in an IDEA case, this Court "is obliged to conduct a modified de novo review" of the administrative record, giving "due weight" to the underlying administrative proceedings); *see also J.P.*, 516 F.3d at 259 (recognizing that the factual findings of the ALJ are considered *prima facie* correct, if they are "regularly made").  And so, the Court GRANTS-in PART and DENIES-in-PART defendants' motion for summary judgment and GRANTS-in PART and DENIES-in-PART plaintiffs' cross-motion for summary judgment.  Fed. R. Civ. P. 56.

### 1. The ALJ's Decision Regarding The 2018-19 IEP Is Supported By The Record Evidence

As an initial matter, the record evidence shows that the ALJ reasonably determined that the 2018-19 IEP provided S.M. with a FAPE in the least restrictive environment available.  In the April 20, 2020, Decision, the ALJ found that "[t]here is little question that [S.M.] suffers from multiple disabilities, which taken together, have a significant impact on his ability to access the educational curriculum and impact his functioning generally."  Dec. at 35.  The ALJ also found that the 2018-19 IEP developed by the MCPS was appropriately tailored to meet S.M.'s

special needs, because this IEP calls for specialized education services that would allow S.M. "to make appropriate progress in light of his circumstances—his learning profile, needs and strengths." *Id.* at 37-38; *see also id.* at 20 (stating the specialized educational services proposed in the 2018-19 IEP).

In this regard, the ALJ observes in the April 20, 2020 Decision, that the MCPS developed the 2018-19 IEP in consultation with S.M.'s parents, based upon the data available to it at the time, including:  (1) the opinions of S.M.'s parents and Mr. Weinfeld; (2) the observations of MCPS educators who had interacted with S.M.; and (3) the educational data provided by the Maddux School, which S.M. attended during the prior school year.  *Id.* at 36-37.  The ALJ also observes that the MCPS appropriately afforded "great weight" to the Maddux School's end-of-year assessment finding that S.M. had proficient skill in numerous educational areas when formulating the goals and objectives of the 2018-19 IEP.  *Id.* at 36 (determining that the MCPS appropriately relied upon, and found more probative, the assessments and opinions of the special educators who had most recently delivered instruction to S.M in developing the 2018-19 IEP).  And so, the ALJ concludes in the April 20, 2020, Decision that defendants failed to show that the 2018-19 IEP was not reasonably calculated to enable S.M. to make appropriate progress in light of his circumstances.  *Id.* at 35-38; *see also Endrew F.*, 137 S. Ct. at 999.

The record evidence supports the ALJ's decision for several reasons.  First, as plaintiffs correctly observe in their cross-motion, there is no dispute between the parties that the ALJ's findings of fact in this case have been regularly made.  Pl. Mem. at 15; *see also* Def. Mem. 27-40 (not disputing that the ALJ's findings of fact regarding the 2018-19 IEP were regularly made).  Given this, the Court must give the ALJ's factual findings in this case significant deference in reviewing the April 20, 2020, Decision.  *See Z.P.*, 399 F.3d at 305 ("[F]actual findings made during the state administrative process are entitled to a presumption of correctness, so long as the findings were 'regularly made.'"); *see also S.A.*, 898 F. Supp. 2d at 874-75.

In this regard, the record evidence makes clear that the ALJ correctly determined that the MCPS developed the 2018-19 IEP based upon the data and information available to it at the time, consistent with the requirements of the IDEA.  Dec. at 36, 38.  For example, the record evidence shows that the MCPS developed the 2018-19 IEP after considering:  (1) S.M.'s test scores and teacher evaluations; (2) teacher observations of S.M. from Beall Elementary School

and Beverly Farms Elementary School; (3) the observations of S.M.'s parents and Mr. Weinfeld; and (4) certain educational data provided to the MCPS by the Maddux School. *See* Pl. Exs. 9, 16-17; Def. Ex. 17. The record evidence also shows that the MCPS specifically considered the educational data provided by the Maddux School showing that S.M. was performing at grade level in math, reading comprehension and listening comprehension at the time. *See* Pl. Ex. 8; Def. Ex. 7; *see also* Dec. at 17-19.

In addition, the record evidence shows that the MCPS appropriately considered other testing and observation data showing that S.M. had certain strengths and abilities that would support his performance at school, including strong language comprehension skills and a strong ability to engage in verbal-conceptual reasoning. *See* Pl. Ex. 61.1. For example, teacher observations made during the time just before the MCPS developed the 2018-19 IEP show that S.M.'s teachers uniformly found him to be social and outgoing. *See* Tr. at 1488-99, 1532-35, 1832-33 (showing that S.M. enjoyed interacting with non-disabled peers and was able to work in small groups and play with nondisabled children). And so, the record evidence supports the ALJ's determination that the MCPS considered all available data in developing the 2018-19 IEP in assessing S.M.'s strengths and needs. Dec. at 38.

The record evidence similarly supports the ALJ's determination that the 2018-19 IEP provides specialized educational services that are tailored to meet S.M.'s unique needs. Indeed, there is no dispute between the parties that the 2018-19 IEP proposes: (1) 2.5 hours per week of special education outside general education; (2) 13 hours and 45 minutes per week of special education inside general education; (3) 1.5 hours per week of speech therapy; (4) 30 minutes per week of occupational therapy; and (5) 1.5 hours per month of social skills services outside of general education. *See* Pl. Ex. 20 at 37-38. This IEP also proposes various supplemental aids and services, as well as instructional and testing accommodations, that would be provided to S.M. throughout the school day. *See id.* at 40-41. Given this, the record evidence supports the ALJ's conclusion that the 2018-19 IEP was reasonably calculated to enable S.M. to make appropriate progress in light of his circumstances, strengths and disabilities. *See* Dec. at 37-38 (citing *Endrew F.*, 137 S. Ct. at 998-99).

Defendants' objections to the ALJ's determinations regarding the 2018-19 IEP—which largely center on their disagreement with the weight that the ALJ afforded to certain evidence in

conducting his analysis—are also unsubstantiated by the record evidence.  Defendants first argue that the ALJ ignored certain differences between the proposed level of specialized instruction for S.M. in the 2018-19 IEP, when compared to the subsequent 2019-20 IEP.  *See* Def. Mem. at 28-30.  But, defendants' objection is belied by the record evidence showing that the educational data provided to the MCPS when the school system developed the 2018-19 IEP shows that S.M. was performing at grade level in math, reading comprehension and listening comprehension at that time.  *See* Pl. Ex. 8; Def. Ex. 7; *see also* Dec. at 17-19; *compare* Pl. Ex. 20 at 37-38, *with* Pl. Ex. 46 at 42-43 (showing that the 2019-20 IEP proposes increasing the number of hours of outside special education per week by 20 hours); *compare* Pl. Ex. 20 at 41, *with* Pl. Ex. 46 at 45 (showing that the 2018-19 IEP proposes placement at Beall Elementary school, while the 2019-20 IEP proposes placement at Dufief Learning Center).  By comparison, the educational data available to the MCPS when it subsequently developed the 2019-20 IEP shows that S.M's academic performance had declined significantly during the 2018-19 school year.  *See* Tr. at 1565.

Defendants' argument that the ALJ failed to consider evidence regarding S.M.'s response to programing at the Lab School of Washington in assessing the 2018-19 IEP is equally unavailing.  Def. Mem. at 30-33; *see also* Dec. at 37, n.25.  As the ALJ correctly observes in the April 20, 2020, Decision, data regarding S.M.'s performance at the Lab School of Washington was not available to the MCPS when it developed the 2018-19 IEP in June of 2018, because S.M. did not begin attending the Lab School of Washington until September 2018.  Def. Mem. at 6; Pl. Mem. at 5.

Defendants' arguments that the ALJ did not consider evidence showing that:  (1) S.M. requires a 2:1 student-to-teacher ratio for reading instruction and (2) the 2018-19 IEP proposes that S.M. spend the majority of his time in a general education setting, are similarly unfounded.  Def. Mem. at 33-36.  Again, the ALJ's findings regarding the required 2:1 ratio for reading instruction is based upon data obtained from the Lab School of Washington *after* the MCPS developed the 2018-19 IEP.  The record evidence also makes clear that the 2018-19 IEP proposes small group testing, special education in all subjects and the use of small group rotations during instruction.  *See generally* Pl. Ex. 20.

Given this evidence, the ALJ's decision that the MCPS provided S.M. with a FAPE in the least restrictive environment available for the 2018-19 school year is supported by the record evidence and consistent with the requirements of the IDEA. And so, the Court DENIES defendants' motion for summary judgment and GRANTS plaintiffs' cross-motion for summary judgment on this issue. Fed. R. Civ. P. 56.

### 2.    The ALJ's Decision Regarding The 2019-20 IEP Is Supported By The Record Evidence

While the ALJ reached a different conclusion regarding the merits of the 2019-20 IEP, the record evidence makes clear that the ALJ's decision that this IEP did not provide S.M. with a FAPE in the least restrictive environment available is also supported by the evidentiary record. In the April 20, 2020, Decision, the ALJ determined that the 2019-20 IEP was not reasonably calculated to confer an educational benefit to S.M., or to allow him to make appropriate educational progress in light of his disabilities. Dec. at 38-45. In evaluating the 2019-20 IEP, the ALJ made two key factual findings that are important to the Court's analysis here. First, the ALJ found that, based upon data provided by the Lab School of Washington, S.M. "requires a ratio of two students to one teacher to access the educational curriculum for reading, to receive an educational benefit, and to make educational progress." Dec. at 23. Second, the ALJ found that the 2019-20 IEP, with implementation at Dufief Learning Center, does not provide for reading instruction at this ratio. *Id.* And so, based upon these factual findings, the ALJ determined that the 2019-20 IEP failed to provide S.M. with a FAPE. Dec. at 37-40 (finding that the MCPS was provided with information that showed that S.M's abilities and needs had significantly changed since 2018).

Again, the record evidence supports the ALJ's decision for several reasons. First, the evidentiary record supports the ALJ's determination that the MCPS did not properly consider information regarding S.M.'s academic performance at the Lab School of Washington in developing the 2019-20 IEP. In this regard, the record evidence shows that the MCPS rejected, without explanation, the opinion of S.M.'s co-teacher at the Lab School of Washington, Ms. Mentrikoski, that S.M. requires reading instruction in a 2:1 student-to-teacher ratio. *See* Pl. Ex. 46 (the 2019-20 IEP); *see also* Tr. at 1565 (Ms. Smiley testifying that, "[f]rom the documents that were provided [to the 2019-20 IEP Team], it would appear that [S.M.'s] needs had increased").

A careful review of the 2019-20 IEP also makes clear that this proposal does not provide for reading instruction in a 2:1 ratio setting, as the record evidence shows S.M. requires. *See, e.g.*, Pl. Ex. 46 at 34 (providing for "small-group direct instruction" for reading phonics instruction); *see also* Tr. at 2028-29. Given this, the record evidence supports the ALJ's conclusion that the 2019-20 IEP was not reasonably calculated to allow S.M. to access the reading curriculum and to make educational progress. *See* Dec. at 37-40.

Plaintiffs' objections to the ALJ's decision regarding the 2019-20 IEP are also not convincing. First, plaintiffs argue without persuasion that the ALJ erred in conducting his analysis of the 2019-20 IEP, because he ignored a stipulation of fact between the parties agreeing that defendants do not contest using a class size with a 9:2 student-to-teacher ratio for S.M.'s instruction. *See id.* at 35-36 (citing Tr. at 1963-64). But, as the record evidence makes clear, the stipulation at issue pertains to the student-to-teacher ratio for S.M.'s class size, rather than the specific student-to-teacher ratio that would be provided for S.M.'s reading instruction. *See* Tr. at 2025 (defendants' attorney stating, "We're not arguing that its inappropriate for [S.M.] to be in a class of nine students with two teachers. . . . Now, to be taught reading and if you're not going to break it down further, yeah, we're challenging that a lot").

Plaintiffs' argument that the ALJ erred in his analysis, because Dufief Learning Center could have provided S.M. with a 2:1 student-to-teacher ratio for reading instruction is also unpersuasive. Regardless of the environment that Dufief Learning Center *could* have provided to S.M., the record evidence makes clear that the 2019-20 IEP did not propose a 2:1 ratio for reading instruction. *See* Pl. Mem. at 36; *see also* Tr. at 2027 (Ms. Berman stating that the size of the smaller-group learning instruction at the Learning Center at Dufief Elementary School "could be two" students); Dec. at 24; Pl. Ex. 46; *see also* Def. Resp. at 13; Tr. at 2027 (Ms. Berman stating that small group learning sizes at Dufief "depend[] on the needs of the students in that class" and "what [the teacher is] teaching at the moment"). Given this, the ALJ correctly found that the 2019-20 IEP was deficient in this regard.

Plaintiffs' argument that the ALJ did not give sufficient deference to the educational judgment of MCPS school officials when evaluating the sufficiency of the 2019-20 IEP is similarly without merit. *See* Pl. Mem. at 36-38. The record evidence shows that the ALJ gave due deference to the views of MCPS school officials in analyzing the 2019-20 IEP, but the ALJ

also appropriately gave greater weight to the views of Ms. Mentrikoski than to these officials in assessing S.M.'s educational needs.  Again, as the evidentiary record makes clear, Ms. Mentrikoski had more recent and sustained contact with S.M. in an educational setting than the MCPS school officials.  Dec. at 41-43 ("[T]he well of longitudinal data from which [she] draws on to form her opinion is deeper and fuller than the respective wells from which" the school officials, Ms. Smiley and Ms. Filler, "draw on to form theirs," as shown by Ms. Mentrikoski's daily interaction with S.M. over many years).[7]  And so, the ALJ appropriately afforded her views greater weight.

Because the record evidence supports the ALJ's decision that the 2019-20 IEP did not provide S.M. with a FAPE in the least restrictive environment available, the Court GRANTS defendants' motion for summary judgment and DENIES plaintiffs' cross-motion for summary judgment on this issue.

**B.    The ALJ's Award Of Tuition Reimbursement Is An Equitable Remedy**

As a final matter, the record evidence and relevant case law also make clear that the ALJ's decision to require the MCPS to reimburse defendants for S.M.'s tuition for the Lab School of Washington during the 2019-20 school year is an equitable remedy under the IDEA. The Supreme Court has recognized that courts have "broad authority to grant 'appropriate' relief, including reimbursement for the cost of private special education, when a school district fails to provide a FAPE." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009) (citation omitted). And so, when, as here, the placement proposed by the school district is inadequate to offer a disabled child a FAPE—and the private education services obtained by the parents are appropriate to the child's needs—the parents may recover reimbursement for the cost of placing their child into a private school.  *Sch. Comm. Town of Burlington*, 471 U.S. at 370.

The record evidence here shows that the ALJ appropriately directed the MCPS to reimburse defendants for S.M's tuition for the 2019-20 school year, because the equitable factors

---

[7] Plaintiffs' argument that the Court should set aside the ALJ's decision, because he erred in finding that the 2:1 student-to-teacher ratio was in dispute when the MCPS developed the 2019-20 IEP, also lacks merit.  *See* Pl. Mem. at 36-38.  The fact that the parties may not have had a disagreement about this ratio when the MCPS developed the 2019-20 IEP does not preclude the ALJ from considering whether this requirement is necessary to provide a FAPE.

required under the IDEA for awarding such relief have been met in this case.  Dec. at 49-50.  As the ALJ correctly observes in the April 20, 2020 Decision, the record evidence shows that defendants attempted to reach agreement with the MCPS on the question of S.M.'s school placement before taking unilateral action in this case.  *Id.* at 48.  As the ALJ also found in the April 20, 2020 Decision, the evidentiary record shows that defendants complied with the statutory and regulatory notice requirements governing tuition reimbursement before placing S.M. in the Lab School of Washington.  *Id.* at 49-50.

In addition, the record evidence shows that defendants participated in good faith during the 2019-20 IEP process, by:  (1) allowing MCPS educators to observe S.M. at the Lab School of Washington; (2) sharing progress reports and testing results from the Lab School of Washington and observation reports from Mr. Weinfeld; (3) observing the proposed placement at the Dufief Learning Center prior to determining whether it was appropriate for S.M.; and (4) notifying the MCPS that they would be seeking public funding for placement at the Lab School of Washington.  *See id*. at 48-49.  Given this, the record evidence supports the ALJ's conclusion that the equitable factors are met in this case to support a remedy of retroactive tuition reimbursement.[8] And so, the Court GRANTS defendants' motion for summary judgement and DENIES plaintiffs' cross-motion for summary judgment on this final issue.

## V.   CONCLUSION

In sum, the record evidence in this IDEA matter shows that the ALJ reasonably determined that the 2018-19 IEP provided S.M. with a FAPE in the least restrictive environment. The record evidence also shows that the ALJ reasonably determined that the 2019-20 IEP fails to provide S.M. with a FAPE in the least restrictive environment.

---

[8] Plaintiffs' argument that the appropriate remedy in this case should be limited to requiring that the MCPS provide S.M. an educational setting with a 2:1 student-to-teacher ratio for reading instruction is not persuasive.  The IDEA grants courts "broad discretion" to fashion "appropriate" remedies for IDEA violations, including tuition reimbursement.  *See* 20 U.S.C. § 1415(i)(2); *see also T.A.*, 557 U.S. at 239. The ALJ also states in the April 20, 2020, Decision that the "most appropriate body to determine [S.M.'s] placement beyond the 2019-20 school year is [S.M.'s] IEP Team, rather than this tribunal."  Dec. at 52.

In addition, the record evidence supports the ALJ's decision to award defendants retroactive tuition reimbursement for the 2019-20 school year.  And so, for the foregoing reasons, the Court:

1.   **GRANTS-in PART** and **DENIES-in-PART** defendants' motion for summary judgment;

2.   **GRANTS-in PART** and **DENIES-in-PART** plaintiffs' cross-motion for summary judgment; and

3.   **DISMISSES** the case.


**IT IS SO ORDERED.**


                                   s/ Lydia Kay Griggsby_____
                                   LYDIA KAY GRIGGSBY
                                   United States District Judge